has the court. I intend to focus on two of the key issues that we present in our briefing today. The first is the construction of what is referred to as the filling limitation that is found in Independent Claims 1 and 9 of the 714 patent. And that term is filling said bit line contact openings, said substrate contact openings, and said gate contact openings with a conducting layer to complete said forming contacts and fabrication of said integrated circuit device. And we believe and contend that the Board unreasonably construed that term when it engrafted a number of conditions that are nowhere supported by the intrinsic record. With respect to Claim 9, there is no substantial evidence in this record that the prior art relied upon by Samsung inherently discloses a claim limitation found only in Independent Claim 9, where in the etched top layer is etched into a lesser... Okay, you're using a lot of time to do an introduction, so why don't you start talking about the specifics of our argument, starting with the one you mentioned, which is claim construction. Right. So, the Board's construction is unreasonable primarily because it engrafts all sorts of conditions and gloss on the construction that are simply inconsistent with the way the invention is described in the 714 patent. I may be confused, or maybe I'm thinking about a different case. It seems to me it's your argument, your claim construction that grafts these additional requirements. Am I wrong about that? You're trying to say that there has to be a single process step, or that all three openings have to be filled with the same substance, and I'm not seeing that in the claim language. So, have I got the right case and the right facts here? You have the right case and the right facts, Your Honor. We submit that the limitation naturally reads as a single filling step. It is filling the three specific openings with a layer to complete the context, and that's a single filling step that occurs, and that's what's described in the patent specification. The claim just talks generally about filling, not filling entirely and not filling at a single time. I think Chief Judge Gross is right that you're arguing limitations that are not there. With respect, Your Honors, we think that the claim naturally requires filling to complete, and that's something so you get a functional contact. You have to fill to get a functional contact, and we'll leave aside the degree of fullness, but just you have to fill it, and it has to be a process that fills all three contacts to ultimately yield a functional contact, and that's But not at the same time and the same step. We would respectfully disagree, Your Honor. Where's the language that leads you to that conclusion? What is it about the claim language that leads you to say it has to be in the same step at the same time? It's filling and then to completion, and the filling to completion of the contact suggests to us that it is at the same Are you looking at the languages filling said bit line, contract opening, said substrate openings, and said gate openings with a conducting layer to complete? Yes, sir. Okay. So why does that not indicate that as long as you, at some time or another, put enough conducting material in for the contact to be complete, you're done? So it doesn't have to be the same conducting material. It doesn't have to be all done at once, and it doesn't have to go up to the lip. First, Your Honor, the specification just describes a single filling step. The holes are formed in a single etch, and then they're filled in a single filling process, and that process is, the overall process is designed to reduce the number of steps that are used during the formation of the semiconductor process, and that's a goal of this. And so Well, the specification just describes one way of accomplishing this result, but the claim is much broader, which is it, and you know, you're entitled to claim it more broadly as long as it's described and enabled, but you can't read the limitations from the specification into the claim. And I would submit that we're not intending to read the limitations into the claim. We're attempting to show that the Board's construction is inconsistent with the intention described in the specification. There's no disclosure in the specification of filling the holes separately, which would require wholly additional masking processes that aren't disclosed. You can't, this isn't like something where you can just fill an individual hole and then fill a separate individual hole. The wafer is in a processing chamber, and the conductive material is applied across the wafer. So it's not, there's not some process that's described that would suggest you could fill a hole, do a bunch of other stuff, fill a second hole, do a bunch of other stuff, and then fill the third hole. That's not what's talked about at the 714 patent. That's not what the invention is describing, and that's not what is appropriate. And the Board got hung up on the use of the word concurrently, which appears earlier in the claim regarding the etching steps. And that was necessary because the way the claim was drafted, there was a first etching step and a second etching step in the clause, and to refer to them occurring at the same time, they used the term concurrently. But that doesn't mandate the need for that term in the filling step. Well it suggests it doesn't mandate, perhaps. I would say that it doesn't even suggest it, since the filling to completion is sufficient. And this matters because in the Okawa prior art, which is the primary reference relied upon by Samsung and the Board, there's actually a multi-step process to form Okawa's holes that consists of a number of intervening steps, and that Okawa's initial filling step would not complete the three contacts in Okawa. And that is because if you consider figures 12A, 12B, and 12C, which is what was relied on below, after the first etch, contact holes 21A and D are ready for filling. They are exposed to substrate in the gate, and if you fill them, they would form a fully functional contact. However, what is identified as 21B over bit line 5A, there's a layer 7A on top of that, that's a silicon nitride layer described by the patent, described by the Okawa patent, and if you filled that hole, you would not have a functional contact. And indeed, Okawa goes on to describe subsequent steps after the first, after its first filling step, where it conducts additional etches to form sidewalls in 21D and 21B, and then it conducts an etch step to etch through 7A, and only then does, is a filling step conducted that would actually complete what is now referred to somewhat confusingly as 21C in figure 12C. Only after that step would you have all three contacts full. And what the board's construction does is, in effect, says, if at any time you have three full contacts, then this claim limitation is met. And we would submit that that would cover anything in the prior art, and that's unreasonably broad. If there are no further questions, I would turn to Claim 9. Claim 9 includes the further limitation regarding differential etching in terms of the etching at the top of the gate versus the bottom of the other two contact holes. And the board made no findings that this was explicitly disclosed in the art, and indeed, Samsung advanced a theory of inherency that this was disclosed inherently by the art, not explicitly by the art. In response, Your Honors, we presented evidence from our expert, Mr. Maltiel, as well as citing two patents that Samsung had cited for the state of the art, particularly the Nulti patent, which shows that in some cases, Samsung's time-based etching might occur, but in some cases it would not. And particularly under the conditions described by Nulti, where Nulti describes process conditions where you do not obtain the differential etching, that it would not necessarily occur in the way that Samsung was proposing, that the board made no factual findings about this. The board did not discuss Nulti. The board did not make any conclusions about the fact that this did or did not necessarily occur that are adequate to support its obviousness finding. And so we would submit, Your Honor, that Claim 9 independently, whatever this Court does with Claim 1 and the filling step, independently Claim 9 is patentable because there's no substantial evidence of the differential that the differential step is inherent. Well, what about the board's discussion of this? Is it 26 and 27, right, of the appendix? That's correct, Your Honor. And it's a very summary discussion. Well, I mean, that's in the eye of the beholder, I guess. I mean, it is a discussion. There's a long paragraph in there that's quite detailed, that has citations to the expert declarations, to the reference, and it kind of explains why your alternative aspect ratio construction claim term, they disagree with that. So, I mean, I guess one can always say somebody could have said more or gone into more detail, but you think that this discussion somehow lacks... So, Your Honor, I'm sorry. Go ahead. So there are two aspects here. One is the aspect ratio, and that was an argument presented below and the board disposed of it. The other was that we said, look, there are these conditions where what they say is happening in the time-based process, and it's specifically the conditions of Nolte with these specific etchant gases and conditions where you won't obtain the in the three-dimensional space and, therefore, is exposed, as I understand it, to the etchant. And we presented that argument, and the board says nothing about that aspect of it or why or how this would necessarily occur and thus satisfy the inherency problem. So that's what we're focused on, Your Honor. There's nothing about Nolte in this paragraph, and there's nothing about Nolte in this discussion. The board didn't engage with the fact that sometimes you may get the etching and sometimes you won't, and if that's the case in a Continental can, there's no inherency and there's no exposure by inherency. And I see that I'm in my rebuttal here. Good morning. Good morning, Your Honors. May it please the Court. The board correctly construed the filling limitation, especially given the broadest reasonable interpretation standard that applies here, and substantial evidence simply supports all of the board's findings. Let me jump right into the filling limitation construction. So as the Court recognizes, PROMAS is trying to import three limitations into this very simple limitation from our perspective. They want to say that it's one step that is concurrently, it's the same material, and you make the contact full. We submit this intrinsic evidence simply does not limit the invention in such a manner. So if we start with the concurrently limitation or the single step, starting with the claim language, it is a broad step, filling. It includes sub-steps as the board recognized. And if you look at their other claim limitations, specifically the concurrently etching limitation, they knew how to claim concurrently. And I heard my colleagues say that this is the whole point of the invention, that filling is the whole point of the invention. That's simply not true. Their invention is about concurrently etching. And they claimed that everywhere in the specification when they wanted to say something was concurrently, they said so. But not so with respect to the filling limitation. And with respect to the same layer concept, the same material, again, the claim language is broad here. It does not support that. And if you look at our expert's testimony, he showed how this language is broad and submitted the plain and ordinary meaning, and that's in terms of the completely full limitation that they want to inject into the claim. Again, that's simply not supported. Both of the experts here submitted testimony that said that a contact does not have to be 100% full for it to be completely full. And you can find testimony from Samsung's expert at Appendix 1471, and you can find testimony from Mr. Malteo, their expert, at Appendix 1446, for example. And in fact, he said a contact could be 85% full and still meet this limitation. So their claim construction simply should be rejected. Unless there are any questions on the claim construction issue, I would like to go to Claim 9. Turning to the substantial evidence issues, they obviously, I think it basically comes down to they want a better written decision. But as this Court is aware, as long as this Court can discern, reasonably discern the Board's fact findings and the path it took to arrive at its decision, this Court should affirm. And we submit the decision does that. So if you look at Claim 9, I heard counsel say that, well, the Board didn't say anything about Nulti. I think we should look at the Board's decision, and I'll show you what the Board said about Nulti, or at least it referred to the arguments PROMAS made. And the way the Board set up its decision was they started with Samsung's arguments. They went through them. They cited the expert testimony. And so with respect to Claim 9, we can see that at Appendix 20, the Board's final decision, and that's where this limitation is discussed at the bottom. The Board starts with the arguments that Samsung made on Appendix 20, and basically shows that Samsung made two arguments, one based on Okava and why it would be inherent. Again, it cites to the expert testimony as well as Samsung's petition. It also recognized that Samsung actually made an alternative argument, obviousness, based on Okava and Zheng, and you can see that at Appendix 21 at the top. Then if you can jump to Appendix 26, the Board then carefully went through and addressed PROMAS' arguments. So if you look at Appendix 26, under subheading C, the differential etching of the etched stop layer limitation, you can see there, the first full paragraph, the Board carefully steps through PROMAS' arguments, and what I want to focus on is the last sentence of that, the last couple of sentences in that paragraph, and I'll read them for the Court. The Board said, Pat Loner further argues that Okava fails to teach such an aspect ratio dependent etch, and that such a feature is not inherent to the process of Okava. And the Board cites to their Pat Loner response, and that's Appendix 839 to 44. And that's where they raise the argument on nullity with respect to inherency. And then the Board goes on and says, well, they made additional arguments with respect to Geng's etch process, and again, that goes to the alternative arguments they made in response to our alternative argument about obviousness. Then the Board, after that, so the Board did carefully look at the arguments. Then after that, at the bottom of Appendix 26, the Board recognizes, they say, well, petitioner response, and they cite to the reply pages from our submission, including the expert declaration of Dr. Shanfield. And you can see that on 26 to 27. And then 27 to 28, the Board says they agree with SAMHSA. We think the Board's decision is supported. And I think what's telling here is Appendix 28, it's the conclusions paragraph, where the Board said, we have reviewed petitioner's explanations and supporting evidence as to how proffered combinations teach the limitations of independent claims 1 and 9, as well as its explanations as to how one of ordinary skill in the art would have combined the relevant teachings of the references. They go on and say, we've reviewed the patent owner's argument regarding this ground and the independent claims, and then say, we agree with the petitioner's analysis, and we do not agree with the patent owner's arguments. I think under Chenery, under this court's case law, for example, PACE, this is more than enough. We request this court of art. Unless you have any other questions, that's all I have. Thank you. Thank you. Going in reverse order, Your Honor, we'll start with Claim 9. We believe that the discussion, the simple recitation of what we might have said, what they might have said, is not a sufficient factual finding under Chenery. This Court's precedent for Claim 9 because it doesn't address the second issue with respect to the differential etching question, which is different from the aspect ratio dependent etching. And with respect to the second obviousness reference that Mr. Mody referenced, which we understand to be that Jeng uses the same materials, and therefore, it would necessarily happen. We submit there have been insufficient findings on that because the existence and the fact that they use the same material is not, in and of itself, enough to give rise to the same etching effects or temperature, pressure, lots of other factors that come into play. With respect to the claim construction issue, we believe that the Board's construction is simply overbroad in an effort to capture the prior art and to include any possible steps that might occur in any intervening processes. And we don't think that the claim, as read in light of the specification and the claim language of the claim term, encompasses such a broad understanding. So, unless there are further questions. Thank you. We thank both sides in the cases.